## No. 7248.

### E. C. PALMER & CO. VS. THE FACTORS' AND TRADERS' INSURANCE COMPANY.

The failure of the insured, to make certain returns of all produce consigned to them and to pay premiums thereon, as stipulated by the underwriter, vitiated and avoided their contract of insurance in the premises.

There was no waiver of the right of forfeiture, on the part of the insurer under the circumstances of the case.

APPEAL from the Sixth District Court for the parish of Orleans. *Rightor*, J

---

#### *Chas. S. Rice* for Plaintiffs and Appellants :

First—The defendant having with full knowledge of alleged breaches of open policy of insurance, received premiums earned thereunder, is estopped from setting up such breaches, to avoid a liability for a loss. Wood on Fire Insurance, pp. 832, 838, 839 ; 34 Iowa, 89 ; 26 Iowa, 9 ; May on Insurance, p. 612 ; 5 Denio (N. Y.) 154 ; 3 Hill (N. Y.) 225 ; 56 Pa. State, 267 ; 19 Barb. (N. Y.) 441 ; 48 N. Y. 379 ; 28 An. 19.

Second—The contract of insurance sued on was voidable, not void, for breach of certain conditions mentioned therein ; and voidable only at the election of defendant. The defendant was liable under such policy for losses occurring between the time it was possessed of such knowledge as authorized it to avoid the policy, and the time of its election to avoid the same. Such election affected future shipments only. 27 Ark. 539 ; Bouvier *verb.* Voidable ; 26 Iowa, 9 ; 55 Mo. 172.

Third—The defendant was liable, at all events, for the loss of the shipment in question, respecting which no default of any sort is alleged, and which occurred before the avoidance of the policy. 28 An. 22.

#### *Gibson, Hall & Montgomery* for Defendants and Appellees :

First—The payment of premiums of insurance under an open river policy that has been in force for a long time, accepted by the insurers, does not bind them on a cotton and produce contract attached to the open river policy and issued a year subsequent to its date, where the insured did not sign the cotton and produce contract or comply with any one of its conditions. 6 ed. Parsons on Contracts, vol. 2, pages 367-8 ; Plahts vs. Ins. Co., 38 Mo. 248 ; Hartshorn vs. Shoe, 15 Gray, 240 ; Protection Ins. Co. vs. Wilson, 6 Ohio State, 553 ; 41 Ill. 295 ; Phillips on Insurance, vol. 1, 5th ed. page 464, Sec. 866, page 467, Sec. 870, page 419, Sec. 764 ; 36 Barb. N. Y. 372 ; 6 Wend. N. Y. 72, 270, 488 ; 21 Pick. Mass. 162 ; 12

Palmer & Co. vs. Factors' and Traders' Insurance Co.

Iowa, 371 ; Berwin vs. Ins. Co. No. 588], N. R. Supreme Court of Louisiana; 28 An. 21, Powell vs. Ins. Co.; 7 An. 244 ; 23 An. 459 ; 27 An. 695.

Second—Estoppel can only be enforced in matters of insurance where one of the parties has misled or prejudiced the other and caused him to believe that he had waived his right to plead a certain fact in defense.  May on Insurance, 221-631, also, p. 626, Sec. 511;  C. C. 2272;  15 An. 569 ; 23 An. 538.

Third—The furnishing of blanks for monthly returns by an insurance company to its patrons does not imply a delivery to their place of business, and the custom of so delivering them if violated, does not relieve the insured from the express conditions of the contract to make monthly returns and pay premiums.

The opinion of the Court was delivered by

Poché, J.   Plaintiffs have taken this appeal from a judgment of the District Court, rejecting their demand for $5000, as insurance on a shipment of sugar and molasses, made to them on the 16th of December, 1875, on board of the steamer W. S. Pike, which, together with her cargo, was destroyed by fire at the port of New Orleans, on the night of that day and month; which demand is based on an open river policy taken from the defendant company on the 10th of July, 1874, and on a cotton and produce contract attached thereto on the 6th of May, 1875.

Among other grounds of defence, the insurance company urges that plaintiffs had forfeited their insurance for non-compliance with the conditions of the contract, by refusing or failing to make returns of, and to pay premiums on *all produce* consigned to them, as required by the express terms of said contract of insurance; and we shall rest our decision on that point alone.

The undisputed material facts shown by the record are: that an open river policy was issued to plaintiffs by the defendant on July 10th, 1874, and that on the 6th of May, 1875, a special cotton and produce contract was entered into by the parties and was attached to said policy, under which contract insurance was effected on all produce and merchandise shipped or to be shipped to the assured, for sale or for their own account, by all good steamboats, sail vessels or railroads, and that said contract contained, among other stipulations, the following condition:

" And it is a condition of this insurance that the assured shall make returns of all produce and merchandise by each boat on which the risk may have terminated, and monthly returns of all cotton on which the risks may have terminated, according to the printed form furnished the assured by this company, and the premium that shall have accrued thereon shall be paid in cash at the beginning of every month; and in case the assured shall neglect or refuse to pay the premium in cash that may have accrued, at the beginning of every month, this insurance may be declared void and of no effect by the insurer."

Plaintiffs admit that in the month of November, 1875, they did fail

to make return on certain shipments of produce consigned to them, which, under the contract, should have been returned to the company for entry on the policy, but they urge that they are protected from the consequences of this infringement by the following considerations:

1st. That the company failed to furnish them the printed forms for making such returns, as it was bound to do.

2d. That their omissions to make returns as admitted did not avoid or annul the contract of insurance, but made it only voidable at the option of the insurer.

3d. That the insurer, well knowing of the consignments thus received by plaintiffs and not returned, did not avoid or annul the policy, but on the contrary continued to recognize it in full force, insuring plaintiffs' property thereunder, and receiving premiums on such insurance, long after it had acquired full knowledge of plaintiffs' omissions.

1. As to the alleged failure of the company to furnish the printed blanks for returns, the record shows that such blanks were kept at the company's office for the use of its customers, whenever they desired any. But plaintiffs contend that defendant had established a custom of sending such blanks to the offices of all its customers, monthly or on the arrival of all consignments of produce to any of them, and that such a custom imposed a duty on defendant to deliver such blanks to them at their office, which the company had failed to do in their case.

A vast amount of conflicting testimony is to be found in the record, on the point, as to whether such blanks were delivered at plaintiffs' office in the months of September, October and November, 1875. After carefully reading all that testimony, we think that the weight of the evidence supports defendant's assertions on this point. But be that as it may, we do not agree with plaintiffs in their interpretation of the contract in this particular. The word "furnish" means to "supply" or "provide with," and a party engaging to furnish certain papers to another, could not be held to have bound himself to *carry* and *deliver* such papers to the person's place, residence or business office. In this case, the main obligation in the clause is on the part of the insured, who binds himself to make due returns of all shipments received by him, under a form suggested by the company, which incidentally agrees to furnish him the printed blanks necessary thereto.

It is not pretended that returns of such shipments in writing or in any other form, would not be a sufficient compliance with the obligation to make returns as required by the clause. Hence, it cannot be urged that the company having, for the greater convenience of its customers, with a view to secure regular returns, of a uniform shape, adopted the habit of sending and delivering such blank returns to customers would

be at fault for neglecting, omitting or failing to deliver, or even to furnish printed forms to these plaintiffs or any other customer in any given case.

2. The essential obligation of the insured in all insurance contracts is to pay the stipulated premium. This condition is the *sine qua non* consideration, under which the insurer undertakes the risk covered by his contract.

Now, under the cotton and produce contract which was entered into by the parties in this case, and made part of the open river policy, the contract of insurance was not completed between them before the return of produce to be made by the insured, and we, therefore, hold that the violation of this obligation on the part of the insured vitiated the policy, and avoided the contract. The very import and meaning of the language used, clearly conveys to the mind the conclusion that such was the intention of the parties, and thus must they be considered to have bound themselves. Plaintiffs' counsel in his able brief, contends with great earnestness, that the admitted violations of the contract by his clients, rendered the contract voidable, only, and he relies, in support of his construction, on the last words of the clause which stipulated that for certain reasons, "this insurance may be declared void and of no effect by the insurer," and he argues that the insurer having failed to declare such nullity previous to the loss, but having, on the contrary, continued to deal with plaintiffs under the policy, the company has waived the consequences of the omissions, for which it could have annulled the contract at its option. But a close inspection of the clause will show that the words relied upon have no reference to the omissions to make returns, but to other matters ; the full sentence reads : "*and in case the assured shall neglect or refuse to pay the premium in cash that may have accrued, at the beginning of every month, this insurance may be declared void and of no effect by the insurer.*" We construe this language, in connection with the preceding part of the clause, to mean that the insured, who has made due returns of all produce consigned to him, in compliance with his contract, and who may fail or refuse to pay the premium, as stipulated, runs the risk of having his insurance declared void, but the company may, at its option, indulge him for a time, in his neglect to pay such premium, and that such neglect does not absolutely forfeit the insurance. But, as to the obligation to make due returns of consignments on the part of the insured, the language of the contract is different, and the consequences of the omissions must of necessity be different, and thus we see that the obligation to make such returns is made "a condition of this insurance."

After a careful review of all the authorities on this subject, we find that, in all contracts of insurance, the conditions attached to a policy

form part of the contract, and that they must be enforced, whence it follows that the violation of an essential or vital condition of such a contract vitiates the policy, and forfeits all the rights thereunder which the defaulting party could have derived.   May on Insurance, 231; Phillips on Insurance, vol. 1, 464-467 ; Parsons on Contracts, vol. 2, page 367; 7 An. 244, Joseph Rafel vs. Nashville Ins. Company; 12 An. 259, Dowville vs. Sun Mut. Ins. Company; 14 An. 797, Shearer vs. La. Mut. Ins. Company; 27 An. 63, Mayers & Minhill vs. Germania Ins. Company; 29 An. 695, Prudhomme vs. Salamander Ins. Company; 28 An. 938, Epstein vs. Mut. Aid &c. Life Ins. Company.

3.  We shall now examine the various acts and dealings of the defendant company under which it is charged that the admitted violation of the contract by plaintiffs had been waived, and the cotton and produce contract thus kept in full force up to the time of the loss sought to be recovered in this suit.

It is charged, and the record shows, that during the months of November and December, after the discovery of the omission to make returns of produce, the defendant had taken risks under the open policy, and received premiums on such insurance from plaintiffs.

Defendant answers to this, that the twenty-nine premiums shown to have been paid by plaintiffs were on their open river policy, and under the stipulations therein contained, and not under the cotton and produce contract under which not a return had been made, and not a single premium paid, from the date of its execution, on May 6th, 1875, to the date of its formal cancellation, on the 22d of December, 1875.   The proper solution of this point requires an examination into the differences or modification operated to the open policy by the adoption of the special cotton and produce contract, which was attached thereto by the parties on the 6th of May, 1875 ; and we see that such examination discloses very serious and material differences between the original policy and the special insurance contract contemplated in the cotton and produce contract.

1st.  In the first place, the open policy includes in its scope, insurance on all merchandise or goods of every description, shipped *to* or *from* the insured, *at* and *from* and *to* all ports.   While, under the cotton and produce contract, the operations are extended to all produce and merchandise shipped *to* and not *from*, the insured, and from all places *to* New Orleans *alone*.

2d.  In the open policy, the insurance is the subject of a special and distinct contract for each shipment, to be approved in each case by the company, and to be entered in the book attached to the policy, and each insurance is endorsed on the bill of lading, together with the nature and value of the goods shipped and the rate of insurance.

Under the cotton and produce contract, the contract is a general one, and each insurance is operated merely by the return of the shipment *to be received* by the insured, and the value of the produce, such as sugar and molasses is stipulated in the general contract, or to be determined by its market value, and in the case of cotton, the value being fixed by the river committee of the board of underwriters.

After appreciating the striking differences existing between these two contracts, the mind can easily conceive how the defendant could legally continue its insurance operations with plaintiffs under the open river policy without being thereby confounded with its rights and obligations under the cotton and produce contract, which plaintiffs were actively violating to the knowledge of the defendant company, whose knowledge and failure to notify plaintiffs of the existence of their own acts cannot be invoked or construed as a waiver of any of defendant's rights flowing from plaintiffs' serious omissions. This is the consideration which so clearly differentiates this case from that of Powell vs. this defendant, reported in 28 An. 19. In that case the defendant contended for a difference to be made between shipments of cotton and shipments of produce, to wit, corn, and the court properly held that the receipt of premiums on consignments of cotton, bound the insurer on consignments of corn, as both were endorsed by, and flowed from, the same contract.

Hence, that decision, so hopefully invoked by plaintiffs, can give them no relief.

Our conclusion is, that by their repeated omissions to make returns of consignments of produce, to which they were bound under the contract, the plaintiffs did vitiate their insurance under the cotton and produce contract, that the evidence fails to show any acts or conduct on the part of the defendant company which could be reasonably or legally construed as a waiver of plaintiffs' violation of the essential condition of the contract of insurance, and that, therefore, the insurance company cannot be held liable for the loss alleged to have been incurred by the plaintiffs by the burning of the steamer W. S. Pike and her cargo.

The judgment of the lower court is, therefore, affirmed with costs.
Rehearing refused.